UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARTHA CAMACHO ORTIZ; MARIA MIRELLA CAMACHO,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE, et al.,<br><br>Defendants. | Case No. 1:22-cv-00508-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Dkt. 8) AND PLAINTIFFS' MOTIONS FOR INJUNCTIVE RELIEF (Dkt. 17) AND SUMMARY JUDGMENT (Dkt. 18)** |

Plaintiff Maria Mirella Camacho is an American citizen who submitted a visa petition on behalf of her mother, Plaintiff Martha Camacho Ortiz. Camacho Ortiz is a foreign national and resident of Mexico. Plaintiffs sued Defendants,[1] alleging they failed to expedite Camacho Ortiz's visa interview and unreasonably delayed adjudicating her visa application. Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 8); Plaintiffs' Emergency Motion for Injunctive Relief (Dkt. 17); and Plaintiffs' Motion for Summary Judgment (Dkt. 18). Under Idaho Local District Rule 7.1(d)(1)(B), the Court finds oral argument is not necessary to resolve this matter. *See also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the

---

[1] The Defendants include U.S. Department of State, U.S. Secretary of State Antony Blinken, National Visa Center Director Conn Schrader, and United States Consulate in Ciudad Juarez Consul General Eric Cohan. (Dkt. 6 at ¶¶ 11-14).

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF - 1**

reasons explained below, the Court grants Defendants' motion to dismiss and denies Plaintiffs' motions for summary judgment and injunctive relief.

I.

BACKGROUND

A. Form I-130 Petition for Alien Relative

The Immigration and Nationality Act (INA) authorizes the issuance of immigrant visas to certain relatives of U.S. citizens. 8 U.S.C. § 1154. To obtain permanent resident status for qualifying foreign relatives under the INA, a U.S. citizen must submit a Form I-130 Petition for Alien Relative (petition) to U.S. Customs and Immigration Services (USCIS). *See* 8 U.S.C. § 1154(a); 8 C.F.R. § 204.1(a)(1). If USCIS approves the petition, it forwards the petition to the State Department's National Visa Center (NVC). *Nusrat v. Blinken*, No. 21-2801, 2022 WL 4103860, at *1 (D.C. Sept. 8, 2022). Then, the foreign national must complete the visa process with the U.S. consulate in her country, which includes submitting a Form DS-260 Immigrant Visa Application (application) and other documentation and appearing for a visa interview with a consular officer. *Id.* Thereafter, the consular officer must either issue or refuse the visa. *Id.*; *see also Arab v. Blinken*, 600 F. Supp. 3d 59, 62-63 (D.C. 2022) (explaining process).

B. Factual Background

Plaintiffs allege Mirella Camacho filed a Form I-130 petition for an immigrant visa for Camacho Ortiz in September 2021. (Dkt. 6 at ¶ 16). In May 2022, the USCIS approved the petition and sent it to the NVC, which prepared the petition to be sent to the U.S. Consulate General in Cuidad Juarez, Mexico (U.S. Consulate). (*Id.* at ¶¶ 16-17). In August 2022, Camacho Ortiz submitted her visa application and other required documents and fees to the NVC. (*Id.* at ¶¶ 19-

20). In October 2022, Camacho Ortiz's case was "deemed documentarily qualified and place[d] in the queue for an immigrant visa interview." (*Id.* at ¶ 21).

On September 30, 2022, even before being placed in the queue for a visa interview, Camacho Ortiz asked the NVC for an expedited interview with the U.S. Consulate to obtain an immigrant visa. (*Id.* at ¶ 25). The basis for Camacho Ortiz's request for an expedited interview is that her son, who is also a Mexican foreign national, will turn 21 years old on October 1, 2023. (*Id.* at ¶ 23). Until Camacho Ortiz's son turns 21, Plaintiffs allege he is an "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i). (Dkt. 6 at ¶ 24). According to Plaintiffs, under this provision, Camacho Ortiz's son would be the beneficiary of Mirella Camacho's petition once Camacho Ortiz's visa application is approved and Camacho Ortiz immigrates to the United States. (*Id.*). Otherwise, when Camacho Ortiz's son turns 21, Plaintiffs allege he is subject to a numerical limitation on allocated visas under 8 U.S.C. § 1153(a)(2)(A). (Dkt. 6).

According to Plaintiffs, "the NVC and consulate routinely expedite cases where, '[t]he applicant may age-out of a visa category or other benefit within the next six months.'"[2] (*Id.* at ¶ 22). Camacho Ortiz's request for an expedited visa interview, however, was denied in October 2022 after a series of communications between Camacho Ortiz and the NVC. (*See id.* at ¶¶ 25-29). In denying Camacho Ortiz's request, the NVC explained that "the Department of State schedules immigration visa interviews in the order that the cases complete processing at the NVC" and that Camacho Ortiz's interview would not be expedited "[t]o be fair to all applicants." (*Id.* at

---

[2] In support of this allegation, Plaintiffs cite to an immigration visa operations website for the U.S. Embassy & Consulates in Mexico, but the link is broken.

¶ 29). In December 2022, Camacho Ortiz again requested an expedited interview, and the U.S. Consulate responded that once a case is "documentarily qualified," "the applicant will be scheduled for an appointment as appointments become available." (*Id.* at ¶¶ 31-32).

### C. Procedural Background

After her second request for an expedited visa interview was denied, Camacho Ortiz filed this action in December 2022. Originally, Camacho Ortiz filed a Petition for Mandamus and Complaint for Declaratory Relief (original complaint). (Dkt. 1). In this original complaint, Camacho Ortiz requested a writ of mandamus under the Mandamus and Venue Act, 28 U.S.C. § 1361, compelling Defendants to adjudicate her immigration visa application promptly. Additionally, she requested a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring Defendants' alleged delay in adjudicating her application is unreasonable and violates the Administrative Procedures Act (APA), 5 U.S.C. §§ 555(b), 706(1).

In response, Defendants moved to dismiss Camacho Ortiz's original complaint under Federal Rule of Civil Procedure 12(b) for improper venue and for failure to state a claim. (Dkt. 5). Defendants' motion prompted the filing of a First Amended Complaint (amended complaint). This amended complaint joins Camacho Ortiz's daughter, Maria Mirella Camacho, as a plaintiff. Mirella Camacho is a United States citizen, residing in Caldwell, Idaho. (Dkt. 6 at ¶ 8). The amended complaint alleges the same claims for relief as the original complaint. (*Compare* Dkt. 1 *with* Dkt. 6).

After Plaintiffs filed their amended complaint, Defendants again filed a motion to dismiss under Rule 12(b). (Dkt. 8). They assert that Mirella Camacho lacks Article III standing; venue is improper under 28 U.S.C. § 1391 because a substantial part of the alleged events or omissions

giving rise to Plaintiffs' claims did not occur in Idaho; and Plaintiffs failed to state a claim upon which relief can be granted. Plaintiffs opposed the motion, including by filing a surreply to Defendants' reply.[3] (Dkt. 14). Thereafter, Plaintiffs filed motions for summary judgment and for injunctive relief.[4] The Court concludes Plaintiffs have failed to state a claim for relief.

## II.

## DISCUSSION

### A. Standing

Defendants challenge Mirella Camacho's standing to bring this action. Article III standing pertains to a federal court's subject matter jurisdiction and is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Article III of the Constitution limits federal court jurisdiction to adjudicating actual "cases" or "controversies." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). To satisfy Article III's "case" and "controversy" requirement, a plaintiff must have standing to bring the complaint. *See, e.g.*, *DaimlerChrysler*

---

[3] Defendants filed an objection to Plaintiffs' surreply. (Dkt. 15). As Defendants correctly note, the local rules do not allow a party responding to a motion to file a surreply. *See* Dist. Idaho Loc. Civ. R. 7.1(c) (allowing responding party to file only response brief). Defendants request that the Court disregard Plaintiffs' surreply. The Court construes Defendants' objection as a motion to strike and strikes Plaintiffs' surreply. *See, e.g.*, *Winn v. Blades*, 1:16-cv-00390-BLW, 2018 WL 297567, at *2 (D. Idaho Jan. 4, 2018) (striking unauthorized surreply); *Alternate Energy Holdings, Inc. v. Giorgi*, 1:14-cv-00225-EJL, 2017 WL 187139, at *4 (D. Idaho Jan. 17, 2017) (same). Regardless, even if the Court were to consider Plaintiffs' unauthorized surreply, it provides no basis for a different outcome in this action.

[4] Plaintiffs' replies in support of their motions for summary judgment and injunctive relief were due on July 6, 2023. Having received neither timely replies nor a request for an extension to file them, the Court enters this ruling resolving the motions.

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF - 5**

*Corp. v. Cuno*, 547 U.S. 332, 352-54 (2006). To establish standing under Article III, the party in question must prove: (1) an injury-in-fact, which is concrete, particularized, and actual or imminent; (2) a fairly traceable causal connection between the injury alleged and the conduct in dispute; and (3) a sufficient likelihood that the relief sought will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[T]he alleged injury must be legally and judicially cognizable," *Raines v. Byrd*, 521 U.S. 811, 819 (1997), which requires the plaintiff to have suffered "an invasion of a legally protected interest," *Lujan*, 504 U.S. at 560.

Defendants argue Mirella Camacho lacks Article III standing because she "has not pled an injury in fact," "is not seeking any relief specific to her or alleging that she has suffered a cognizable injury" and "has no legally protectable interest in having her mother immigrate to the United States." (Dkt. 8-1 at p. 2). In response, Plaintiffs assert Mirella Camacho has a legally protectable interest and Article III standing because she is "Camacho Ortiz's I-130 Petitioner and Sponsor on the Form I-864, Affidavit of Support, which required [Mirella Camacho] to show that she will be financially responsible for [Camacho Ortiz] upon her entry to the United States." (Dkt. 12-1 at p.5).

The Court concludes Mirella Camacho has standing—but not for the reason she asserts. She does not have standing, as she argues, because she submitted a Form I-130 petition on Camacho Ortiz's behalf. Rather, according to Plaintiffs' allegations, the USCIS had already approved Mirella Camacho's petition before Plaintiffs filed this action. Accordingly, Mirella Camacho is not suffering from an injury-in-fact vis-à-vis her approved petition. *See, e.g.*, *Nusrat*, 2022 WL 4103860, at *4 (concluding court lacks jurisdiction after USCIS approved petition and noting scenario either presents standing or mootness defects); *Abbas v. United States Dep't of*

*Homeland Security*, No. 1:20-cv-03192, 2021 WL 3856625, at *2 (D.C. Aug. 29, 2021) ("Federal district courts routinely dismiss as moot mandamus actions requesting adjudication of an I-130 petition once it has been adjudicated."). Moreover, Plaintiffs did not sue USCIS, the agency charged with approving Form I-130 petitions.

Mirella Camacho does have standing, however, based on her allegation of an injury-in-fact resulting from Defendants' allegedly unreasonable delay in deciding Camacho Ortiz's visa application. *See Abbas*, 2021 WL 3856625, at *2 (concluding petitioner has standing to challenge NVC's unreasonable delay in processing visa application of petitioner's relative). Regarding this injury, Plaintiffs allege their "family faces immediate, irreparable harm: the dire prospect of losing their chance to immigrate to the United States to be together." (Dkt. 6 at ¶ 35). Accordingly, the Court concludes Camacho Ortiz has standing to bring this action. *See Trump v. Hawaii*, ___ U.S. ___, ___, 138 S. Ct. 2392, 2416 (2018) ("We agree that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact.").

Defendants cite *Khachatryan v. Blinken*, 4 F.4th 841 (9th Cir. 2021), for the proposition that Mirella Camacho does not have standing to assert an unreasonable delay claim in processing her mother's visa application. In reliance on *Khachatryan*, Defendants argue Mirella Camacho "has no liberty interest in having her mother immigrate to the United States . . . so she cannot show how she has suffered any legally cognizable injury." (Dkt. 8-1 at p. 9). *Khachatryan* is distinguishable from this case.

In *Khachatryan*, Danuns—a United States citizen and Khachatryan's son—challenged the Government's denial of an immigrant visa for Khachatryan. *Id.* at 844. Danuns claimed his "Fifth

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF - 7**

Amendment right to due process was violated by the denial of his father's visa because a consular officer allegedly denied that visa in bad faith." *Id.* The Ninth Circuit considered whether it should "recognize a fundamental liberty interest of an adult child to bring an alien parent into the United States." *Id.* at 858. Resolving this issue, the Court concluded "[b]ecause an adult citizen has no fundamental right to have his or her unadmitted nonresident alien parent immigrate into the United States, Danuns has no constitutional liberty interest that is protected by the Due Process Clause." *Id.* at 860.

Unlike *Khachatryan*, Defendants have not yet denied Camacho Ortiz's visa application, and Mirella Camacho is not asserting either a due process claim under the Fifth Amendment or a fundamental right to bring her mother to the United States despite a denial. Rather, Mirella Camacho is only challenging Defendants' alleged failure to grant her mother an expedited visa interview and to process her mother's application within a reasonable timeframe.[5] Defendants do not cite any authority for their proposition that because Mirella Camacho lacks a fundamental right

---

[5]  The source of the denial to expedite Camacho Ortiz's visa interview is not entirely clear from the record. The NVC initially communicated the denial but refers to the State Department's practice in scheduling interviews. (Dkt. 6 at ¶¶ 25-29). Meanwhile, the U.S. Consulate appears to have denied Plaintiffs' second request for an expedited interview. (*Id.* at ¶¶ 31-32). Mirella Camacho's standing to sue a particular Defendant may turn on who is responsible for refusing to expedite Camacho Ortiz's interview. *See Nusrat v. Blinken*, No. 21-2801, 2022 WL 4103860, at *4 (D.C. Sept. 8, 2022) (finding plaintiff lacked standing against certain defendants because she failed to plausibly allege those defendants caused delay in visa adjudication or had a role in the adjudication process). Plaintiffs' allegations plausibly implicate all Defendants, however. Regardless, because Mirella Camacho has standing to sue at least one Defendant and because Defendants do not challenge Mirella Camacho's standing as to each individual Defendant, the Court does not need to resolve which Defendant has caused the alleged delay in processing Camacho Ortiz's visa application. Whether one or more Defendants caused the delay, the Court's conclusion that Plaintiffs fail to state a claim for relief remains the same.

under the Due Process Clause to have her mother immigrate to the United States, she likewise lacks Article III standing to challenge an alleged unreasonable delay in processing her mother's visa application. The Court is unaware of any such authority. Absent supporting authority, this Court declines to extend the rule in *Khachatryan* to conclude Mirella Camacho has no Article III standing in this case.

   B. Venue

Defendants also challenge venue as improper. A challenge to venue is properly brought under Federal Rule of Civil Procedure 12(b)(3). Venue is proper in an action against an agency of the United States or an officer or employee of the United States acting in his official capacity in any judicial district in which (A) the defendant resides; (B) a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated; or (C) the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e)(1). When ruling on a Rule 12(b)(3) motion, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). The Court must, however, draw all reasonable inferences and resolve all factual conflicts in favor of the nonmoving party. *Id.* at 1138. When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

Plaintiffs allege venue is proper because "Mirella Camacho is domiciled in the District of Idaho." Defendants assert Mirella Camacho's domicile cannot be considered because she lacks

standing. Having concluded Mirella Camacho has standing, however, the Court concludes venue is proper in this District because Mirella Camacho satisfies 28 U.S.C. § 1391(e)(1)(C)—namely she resides in Idaho and no real property is involved in this action.

### C. Failure to State a Claim

Defendants assert Plaintiffs' amended complaint fails to state a claim for relief. Under Federal Rule of Civil Procedure12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims pursuant to Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact or legal conclusions couched as facts. *Id.* at 678-79; *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Plaintiffs attempt to allege an unreasonable delay claim under the APA and 28 U.S.C. § 1361. Section 1361 provides that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A district court may issue a writ of mandamus

only if:  (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available.  *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003).  "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case."  *Uranga v. United States Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 98 (D.C. 2020).

Mandamus cannot be used to compel or review discretionary acts of governmental officials.  *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983).  It "is traditionally proper only to command an official to perform an act which is a positive command and so plainly prescribed as to be free from doubt.  The claim must be clear and certain and the duty of the officer ministerial."  *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir. 1976).  Further, the Supreme Court has consistently cautioned "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

A claim under the APA is very similar to a claim for mandamus under 28 U.S.C. § 1361.  Indeed, the Supreme Court has construed a claim seeking mandamus under § 1361 to be, in essence, the same as one for relief under § 706 of the APA.  *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).  The APA allows a plaintiff to challenge an agency's unreasonable delay.  It requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a district court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  "The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of

course, agency regulations that have the force of law).” *Id.* at 65.  Importantly, while the APA authorizes courts to compel unreasonably delayed agency action, "a delay cannot be unreasonable with respect to action that is not required." *Id.* at 63 n.1.

   1. **Request for Expedited Visa Interview**

The crux of Plaintiffs' allegations is that Defendants are required to expedite Camacho Ortiz's visa interview with the U.S. Consulate to preserve her son's status as a beneficiary of Mirella Camacho's Form I-130 petition before he turns 21 years old.[6]  (*See, e.g.*, Dkt. 6 at ¶¶ 3, 22-24, 35, 41-42, 47, 49, 52, 58, 67).  The authorities on which Plaintiffs rely, however, do not establish Defendants have a mandatory duty to expedite Camacho Ortiz's interview.

For example, Plaintiffs cite 22 C.F.R. § 42.81(a), which addresses the procedure for refusing immigrant visas.  (Dkt. 6 at ¶¶ 44, 51, 56, 62).  This regulation, however, only provides a consular officer must issue, refuse, or discontinue granting a visa after the application is completed and executed before a consular officer.  It provides no timeframe, expedited or otherwise, for taking these actions and, thus, does not establish a mandatory duty to expedite Camacho Ortiz's visa interview.

Plaintiffs' assertion that the State Department's "guidance" imposes "a non-discretionary duty" to expedite Camacho Ortiz's visa interview is also unpersuasive.  (*See id.* at ¶¶ 22, 51-52).  Plaintiffs allege "the NVC and [U.S. Consulate] routinely expedite cases where, '[t]he *applicant*

---

[6]  Plaintiffs' requested relief and arguments in their brief in support of their motions for summary judgment and injunctive relief, likewise, focus on the assertion Defendants have a mandatory duty to expedite Camacho Ortiz's visa interview.  For example, they repeatedly argue "this case must be expedited per the NVC and U.S. Consulate's own policy" to expedite interviews.  (*See, e.g.*, Dkt. 18-1 at pp. 4, 12).

may age-out of a visa category or other benefit within the next six months.'" (*Id.* at ¶ 22 (emphasis added)). Even assuming an agency's "guidance" or a general policy or procedure establishes a nondiscretionary duty, the "guidance" Plaintiffs quote does not establish such a duty, because the applicant—Camacho Ortiz—is not aging out. Rather, her son is. Accordingly, the "guidance" Plaintiffs quote would not apply in Camacho Ortiz's situation.

### 2. Unreasonable Delay

While Plaintiffs' allegations primarily focus on Defendants' refusal to expedite Camacho Ortiz's visa interview, they also allege more generally Defendants have a "clear, non-discretionary, and mandatory duty" to adjudicate Camacho Ortiz's visa application within a reasonable time. (*Id.* at ¶ 45). Under 5 U.S.C. § 555(b), an agency has a duty to act within a reasonable timeframe. That section provides, in part, that "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." In determining whether an unreasonable delay exists, courts analyze the "*TRAC* factors." *See Telecomms. Research & Action Ctr. (TRAC) v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (discussing six *TRAC* factors); *see also In re Natural Res. Def. Council, Inc.*, 956 F.3d 1134, 1138-39 (9th Cir. 2020) (analyzing *TRAC* factors to determine whether agency delay under 5 U.S.C. § 555(b) was egregious and exceptional and rare instance warranting mandamus).

The *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

> court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 79-80 (citations and internal quotation marks omitted).

Courts disagree whether the *TRAC* factors should be analyzed to resolve a motion to dismiss. Some decline to analyze the factors at an early stage in the case to determine whether a delay is unreasonable; others, however, analyze the *TRAC* factors to determine whether a plaintiff has stated a plausible claim for an unreasonable delay. *Compare Gonzalez v. Paul*, No. 3:20-CV-00971-AC, 2021 WL 6119256, at *10 (D. Or. Apr. 8, 2021) (declining to analyze *TRAC* factors and concluding facts best resolved at summary judgment stage), *with Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345, 1359 (E.D. Cal. 2020) (analyzing *TRAC* factors to resolve motion to dismiss). In opposition to Defendants' motion to dismiss, Plaintiffs argue the Court should decline to consider the *TRAC* factors as premature. (Dkt. 12-1 at p. 8).

Nevertheless, Plaintiffs alternatively offer argument regarding the *TRAC* factors in opposition to Defendants' motion to dismiss. (*Id.* at pp. 9-17). Subsequently, Plaintiffs moved for summary judgment.[7] (Dkt. 18-1). In support of summary judgment, Plaintiffs note that 277 days have passed since Camacho Ortiz submitted all her required documentation to NVC and that 220 days have passed since her case was "placed in the queue for an immigrant visa interview at the U.S. Consulate." (*Id.* at p.10). They argue this length of delay is unreasonable. An analysis

---

[7] Because Plaintiffs moved for summary judgment, they are on notice that the Court may consider the alleged facts in resolving this case. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (noting courts have discretion to convert motion to dismiss to one for summary judgment when a party has notice); *Borzouei v. Bitter*, No. 22-CV-872-MMA (KSC), 2022 WL 17682659, at *6 (S.D. Cal. Dec. 14, 2022) (considering *TRAC* factors to grant motion to dismiss after parties submitted declarations).

of the *TRAC* factors, however, shows Plaintiffs have failed to allege a plausible claim that Defendants have unreasonably delayed in adjudicating her visa application.

Courts often consider together the first factor (requiring that a rule of reason govern the time an agency takes to make a decision) and the second factor (considering whether Congress provided an expected timetable in the enabling statute). *Indep. Mining Co.*, 105 F.3d at 507-09. The first rule of reason factor, however, is considered the most important. *In re Natural Res. Def. Council*, 956 F.3d at 1139. In the context of immigration processing, Congress has not provided any firm timetable for scheduling visa interviews. *Arab*, 600 F. Supp. 3d at 69. Rather, agencies have wide discretion in immigration processing. *Id.*

Regarding the first and second *TRAC* factors, Plaintiffs argue that "there is no rhyme or reason for [Defendants'] delay" and that 8 U.S.C. § 1571(b) provides Congress's timetable for the speed within which it expects decisions on visa applications. Section 1571(b) provides that "it is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." Plaintiffs contend this statute provides the relevant timetable to assess whether Defendants' alleged delay is unreasonable. Numerous courts, however, have recognized the "sense of Congress" referenced in § 1571(b) is nonbinding. *See, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.C. 2021) (citing cases interpreting language as nonbinding); *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.C. 2021) (interpreting language as nonbinding); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.C. 2021) (same). Further, a contrary conclusion would ignore "the overwhelming caselaw rejecting unreasonable delay challenges for applications pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b)." *Mohammad*, 548 F. Supp. 3d at 167.

**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND INJUNCTIVE RELIEF - 15**

This Court agrees the "sense of Congress" language in § 1571(b) is nonbinding and does not provide an enforceable timetable for a decision on Camacho Ortiz's visa application. With no timeline, the Court looks to case law for guidance. *See In re Natural Res. Def. Council*, 956 F.3d at 1139 (discussing case law in addressing the rule of reason factor); *Dastagir*, 557 F. Supp. 3d at 165 ("With no set timeline, the Court looks to case law for guidance."). Generally, courts have found "immigration delays in excess of five, six, [and] seven years are unreasonable, while those between three to five years are often not unreasonable." *Arab*, 600 F. Supp. 3d at 70 (citing cases and concluding 30-month delay "is not long enough to tilt the first two *TRAC* factors in [plaintiff's] favor"); *see also Dastagir*, 557 F. Supp. 3d at 165 (concluding 29-month delay not unreasonable); *Siwen Zhang v. Cissna*, No. CV 18-9696, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (citing cases and noting courts generally find delay of approximately four years not unreasonable as a matter of law); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.C. 2017) (concluding "a delay of [two years] does not typically require judicial intervention"); *cf. In re A Community Voice*, 878 F.3d 779, 787 (9th Cir. 2017) (noting agency delay of only a few months or years not unreasonable).[8] Meanwhile, at least one court has concluded a delay of "slightly more than a year

---

[8] Plaintiffs argues any reliance on recent caselaw is misplaced because it addresses delays resulting from agency backlogs caused by the COVID-19 pandemic. Plaintiffs, however, provide no information any pandemic related backlogs have dissipated, and the Court declines to presume this fact. Moreover, less recent caselaw supports the conclusion that similar timelines applied pre-pandemic. *See, e.g., Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (finding "slightly more than a year is drastically short of what constitutes an unreasonable delay in the Ninth Circuit").

is drastically short of what constitutes an unreasonable delay in the Ninth Circuit." *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019).

In this case, Camacho Ortiz has been documentarily qualified and placed in the queue for a visa interview since October 2022—a delay of only about nine months.  Even if the Court considered the date of Camacho Ortiz's visa application in August 2022 as the operative date, the delay has been only about eleven months.  Based on a review of the caselaw addressing unreasonable delay claims, Defendants' delay in processing Camacho Ortiz's application is not significant enough for the first two *TRAC* factors to weigh in Plaintiffs' favor.

Likewise, the fourth *TRAC* factor—the effect of expediting a delayed action on the agency's activities of a higher or competing priority—does not weigh in Plaintiffs' favor.  The NVC communicated to Plaintiffs that Camacho Ortiz's visa interview would not be expedited because, "[t]o be fair to all applicants, the Department of State schedules immigrant visa interviews in the order that the cases complete processing at the NVC."  (Dkt. 6 at ¶ 29).  In other words, Defendants are scheduling visa interviews on a first come, first serve basis.  Other than Plaintiffs' citation to a policy providing Defendants purportedly expedite cases where the *applicant* may age out (Dkt. 6 at ¶ 22), Plaintiffs cite no authority for the proposition Defendants bend their first come, first serve policy for applicants in Camacho Ortiz's situation where her nonapplicant son is aging out.  The NVC's communication stating Camacho Ortiz's interview would not be expedited "[t]o be fair to all applicants" (Dkt. at ¶ 29), shows Defendants do not bend their policy in such circumstances.

"Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back

one space and produce no net gain." *Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 102 (D.C. 2021). Indeed, courts have "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.C. 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)); *see also Uranga*, 490 F. Supp. 3d at 104 (same). Accordingly, the fourth *TRAC* factor does not favor Plaintiffs.

Finally, the sixth *TRAC* factor does not weigh in Plaintiffs' favor. Plaintiffs do not allege or otherwise offer any information showing Defendants have acted in bad faith by refusing Camacho Ortiz's expedited visa interview or by otherwise delaying a decision on her application. Only the third and fifth factors weigh in Plaintiffs' favor. Namely, the delay arguably impacts Plaintiffs' health and welfare adversely and prejudices their interests in being together as a family. On balance, however, the Court concludes the *TRAC* factors do not demonstrate, and thus Plaintiffs have failed to allege, that Defendants have unreasonably delayed in processing or deciding Camacho Ortiz's application. Accordingly, the Court grants Defendants' motion to dismiss.

### III.
### CONCLUSION

IT IS ORDERED that:

1. Plaintiffs' Reply in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 14) is **STRICKEN**;

2. Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 8) is **GRANTED**;

3.  Plaintiffs' Emergency Motion for Injunctive Relief (Dkt. 17) is **DENIED**;

4.  Plaintiffs' Motion for Summary Judgment (Dkt. 18) is **DENIED**; and

5.  Plaintiffs' First Amended Complaint (Dkt. 6) is **DISMISSED** without prejudice.

DATED: July 07, 2023

*Amanda K. Brailsford*
**Amanda K. Brailsford**
U.S. District Court Judge